NOT FOR PUBLICATION                                    (Doc. Nos. 24, 38, 50)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| | : | |
| JOSEPH SERFESS, | : | |
| | : | |
| Plaintiff, | : | Civil No. 13-406  (RBK/JS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| EQUIFAX CREDIT INFORMATION | : | |
| SERVICES, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion for summary judgment of Equifax

Credit Information Services ("Equifax"), and upon the appeal by Equifax of Magistrate Judge

Schneider's order of June 17, 2014, in which he granted in part the motion of Joseph Serfess

("Plaintiff") to file an amended complaint.

## I.      BACKGROUND AND PROCEDURAL HISTORY

This dispute arises out of allegedly inaccurate information appearing on Plaintiff's credit

report after the sale of a property that he formerly owned.  Equifax is a credit reporting bureau

that receives information from creditors, public records, merchants and other sources, and uses

that information to compile and sell consumer credit reports.  (Equifax's Statement of

Undisputed Material Facts ("SUMF") ¶ 3.)[1]  Consumers of Equifax's product are subscribers who have a permissible purpose for obtaining such credit reports and wish to use them to evaluate the credit risk of consumers.  (Id. ¶¶ 3-4.)  Equifax only accepts information on a consumer's credit from sources that it has determined to be reasonably reliable, and the approved sources must agree to provide only accurate information, and to investigate customer disputes submitted by Equifax.  (Id. ¶¶ 7-8.)

If a consumer wishes to dispute information in his or her credit file, the consumer may submit a dispute to Equifax by telephone, mail, or internet.  (Id. ¶ 17.)  Equifax's standard practice when it receives such a dispute is to review the consumer's credit file and any information provided by the consumer.  (Id.)  If further investigation is required, it will contact the entity that furnished the disputed data, and provide the nature of the consumer's dispute and the consumer's account information to the data furnisher.  (Id. ¶ 18.)  These communications are generally made through a form called an Automated Consumer Dispute Verification Form ("ACDV").  (Id. ¶ 19.)  If the data furnisher advises Equifax that it has investigated the matter but has no changes, Equifax will generally leave the account as is.  (Id. ¶ 24.)  However, if it tells Equifax to delete or update the disputed account information, Equifax makes the change. (Id. ¶ 23.)  Equifax sends the consumer the results once the reinvestigation is complete. (Id. ¶ 25.)

In May 2004, Plaintiff obtained a mortgage secured by real property in Clayton, Delaware.  (Id. ¶ 26.)  In 2010, Bank of America ("BOA") purchased the mortgage.  (Id. ¶ 27.) Beginning in 2010, Plaintiff indicated that he tried, but was unable to, sell the property through a private sale.  (Id. ¶ 28.)  On March 31, 2011, Plaintiff and BOA sold the property for less than

---

[1] As Plaintiff did not provide a responsive statement to Equifax's Statement of Undisputed Material Facts, the Court must treat Equifax's material facts as undisputed.  See L. Civ. R. 56.1(a) (indicating that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion").

the full amount owed.  (Id. ¶ 29).  Plaintiff alleges that Equifax erroneously reported that his property was subject to foreclosure and that he still had an unpaid balance owed to BOA resulting from his mortgage loan that was "charged off" by BOA.  He alleges that the disposition of the property should have been reported as a "short sale" instead of a foreclosure.  Between April 2011 and April 2012, Plaintiff contacted Equifax seven times to dispute the BOA account.  (Id. ¶ 30.)  Each time, Equifax contacted BOA, and BOA responded that the account was reporting correctly.  (Id. ¶¶ 31-45.)  Some of the responses from BOA specifically indicated that the account was "charged off" with a balance of $87,745, which was one of the principal issues disputed by Plaintiff.  (Id. ¶¶ 38, 40, 42, 44.)  BOA also indicated that the account was correctly reported as having a "late history."  (Id. ¶ 42, 44.)  On each occasion, Equifax sent Plaintiff the results of its reinvestigation.  (Id. ¶¶ 31-45.)

On January 10, 2013, Plaintiff filed his complaint against Equifax, alleging violations of the Fair Credit Reporting Act ("FCRA"), and asserting claims for defamation, invasion of privacy, and negligence.  Pursuant to a Scheduling Order entered by Magistrate Judge Schneider, August 1, 2013 was the deadline to move to amend pleadings, and November 29, 2013 was the fact discovery deadline.  (Scheduling Order of May 29, 2013, ECF Doc. No. 12.)  On October 28, 2013, Judge Schneider held an in-person status conference for the purpose of addressing discovery disputes.  At that conference, Plaintiff indicated that he wished to amend his complaint because he had recently discovered that BOA might have been responsible for the errors in his credit report.  (Transcript of Proceedings held on October 28, 2013 at 22-28, ECF Doc. No. 22.)  Judge Schneider suggested that Plaintiff draft a proposed amended complaint and seek Equifax's consent to file the amended pleading.  (Id. at 27.)  On February 14, 2014, Equifax filed a motion for summary judgment, and then on February 28, 2014, Plaintiff filed his motion to amend the

complaint.  It is not clear whether Plaintiff ever sought Equifax's consent to file an amended pleading.

On May 1, 2014, Judge Schneider heard oral argument on the motion to amend, and on June 17, 2014, he entered a Memorandum Order granting the motion in part.  He granted Plaintiff leave to file an amended complaint naming BOA as an additional defendant, and adding BOA to the existing counts, but denied Plaintiff's motion as it related to a proposed new fraud and conspiracy count against both Equifax and BOA.  (Order of June 17, 2014 at 10-11, ECF Doc. No. 34.)  However, the denial of Plaintiff's request to assert a fraud and conspiracy count against both defendants was issued without prejudice, and Plaintiff has since filed a new motion to amend his complaint, which is now pending before Judge Schneider. (ECF Doc. No. 49.)  Equifax's motion for summary judgment and its appeal are fully briefed and ripe for decision.[2]

## II.    LEGAL STANDARD

### A.  Appeal of a Magistrate's Decision

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge has authority to hear and determine non-dispositive pretrial matters.  A district judge may reconsider these determinations on appeal if the decision was clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); N.L.R.B. v. Frazier, 966 F.2d 812, 816 (3d Cir. 1992).  Motions to amend are considered non-dispositive,

---

[2] Because Judge Schneider's order allowing amendment did not grant Plaintiff leave to add any new counts against Equifax, it does not moot Equifax's motion for summary judgment.  The mere addition of new parties without new claims against an existing party does not necessarily moot a summary judgment motion.  See Jake Ball Trust v. Durst, Civ. No. 12-5255, 2013 WL 4008802, at *3 n.6 (D.N.J. Aug. 5, 2013) (finding that the amendment of a complaint to include claims against additional defendants "does not moot the pending motion for partial summary judgment" by the already-existing defendant); Graham v. City of Oklahoma City, 859 F.2d 142, 144 (10th Cir. 1988) (summary judgment was appropriate on amended complaint where it was identical to the original complaint except for the addition of defendants "as long as the losing party was on notice that she had to come forward with all her evidence").

and must be clearly erroneous to warrant reversal in the district court.  Gutierrez v. Johnson & Johnson, 227 F.R.D. 255, 257 (D.N.J. 2005).

The Supreme Court has defined the "clearly erroneous" standard as when the "reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); see also Bobian v. CSA Czech Airlines, 222 F. Supp. 2d 598, 601 (D.N.J. 2002).  The party filing the appeal has the burden of showing that the magistrate judge's ruling was clearly erroneous.  Exxon Corp. v. Halcon Shipping Co., Ltd., 156 F.R.D. 589, 591 (D.N.J. 1994).  Even if the district court disagrees with the magistrate's decision, the magistrate's ruling should be sustained if it passes the "clear error" test.  Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000).  Therefore, reversal should be exercised only upon a showing of abuse of discretion.  Id. at 68; Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996).

### B.  Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the

absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" <u>Corliss v. Varner</u>, 247 F. App'x. 353, 354 (3d Cir. 2007) (quoting <u>Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.</u>, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   MOTION TO AMEND

Equifax argues that Judge Schneider erred in granting Plaintiff's motion because Plaintiff knew of the basis for amendment well before the deadline to amend pleadings provided for in the Scheduling Order, and thus good cause did not exist. It also argues that allowing the amendment

would cause prejudice to Equifax and unduly delay the case.  The Court considers these arguments in turn.

First, Equifax indicates that in its Initial Disclosures, provided to Plaintiff on June 7, 2013, it indicated that it contacted BOA seven times when Plaintiff disputed the account, and BOA verified the information each time.  (Equifax Initial Disclosures, Declaration of Brian J. Olson, Exs. 1, 2.)  Thus, it argues that Plaintiff was on notice of BOA's potential responsibility for the alleged errors in his credit report at that time, and that although Plaintiff represented that he was just discovering BOA's involvement at the October 28, 2013 status conference, he could have or should have discovered its involvement earlier.

Further, Equifax argues that there is no justification for the delay of four months from October 28, 2013 to February 28, 2014, when Plaintiff actually filed his motion to amend.  Plaintiff indicated at oral argument on the motion to amend that this delay was due to his work schedule and his lack of training as an attorney and the resultant need to perform research.  (Transcript of Proceedings of May 1, 2014 at 20, ECF Doc. No. 33.)

The question is not whether this Court agrees with Judge Schneider's decision, but whether it was "clearly erroneous," and the Court finds no such clear error present here.  Judge Schneider first found that under Federal Rule of Civil Procedure 16(b), "good cause" must be shown to allow amendment after the deadline to amend pleadings set forth in a scheduling order.[3]  "Good cause" to excuse compliance with a scheduling order requires a finding that the moving party could not reasonably meet the deadlines despite its diligence.  Koplove v. Ford

---

[3] Equifax makes much of the fact that Plaintiff did not mention Rule 16 by name when seeking leave to amend, and only advanced arguments related to Rule 15.  The Court will not consider this argument in detail, as Judge Schneider committed no error in considering the applicable law, regardless of whether it was specifically invoked by a pro se litigant.  See Allah v. Whitman, Civ. No. 02-4247, 2006 WL 182080, at *2 (D.N.J. Jan. 24, 2006); Cromwell v. United Steel Workers of Am., 423 F. App'x 213, 216 n.4 (3d Cir. 2011).

Motor Co., 795 F.2d 15, 18 (3d Cir. 1986).  Judge Schneider found that good cause existed under Rule 16, because Plaintiff credibly explained at the October 28, 2013 status conference that he did not know about the precise relationship between BOA and Equifax until approximately that time.  (Order of June 17, 2014 at 4-5.)  He also found that any further delays between that conference and the filing of the motion did not negate good cause because of Plaintiff's pro se status and the holidays that took place between October 28, 2013 and February 28, 2014.  (Id. at 5.)  He concluded by finding that "although plaintiff could have filed his motion earlier, plaintiff acted reasonably diligently."  (Id.)

A litigant's pro se status does not excuse him from compliance with the procedural rules of this Court.  Siluk v. Beard, 395 F. App'x 817, 820 (3d Cir. 2010).  However, in appropriate instances, the "extent of [a litigant's] diligence should be viewed in light of" his pro se status. Lehman v. Garfinkle, Civ. No. 08-9385, 2013 WL 857739, at *7 (S.D.N.Y. Mar. 7, 2013). Further, "broad discretion" is involved in a court's finding as to what kind of showing a litigant must make to satisfy Rule 16(b).  Carter v. Estate of Lewis, Civ. No. 08-1301, 2011 WL 5416325, at *3 (D.N.J. Nov. 7, 2011) (quoting Phillips v. Greben, Civ. No. 04-5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006)).  The Court finds that Judge Schneider's conclusions as to good cause are based upon the evidence and are an appropriate exercise of discretion.  Although disclosures were made to plaintiff more than a month before the deadline to amend pleadings, and might have alerted Plaintiff to the need to add BOA as a defendant, it is not clear error to find that a pro se plaintiff may not have immediately realized the need to join a new defendant upon receipt of the disclosures, even through reasonable diligence.  Therefore, this Court will not disturb Judge Schneider's findings as to Rule 16.[4]

---

[4] The Court does not discuss in detail the additional delay until February 28, 2014 in the context of good cause, as Rule 16 only relates to Plaintiff's failure to comply with the Scheduling Order, which provided that amendments to

Having found that Rule 16's good cause requirement was satisfied in connection with the Scheduling Order, Judge Schneider also properly analyzed the propriety of amendment in the context of Rule 15.  Rule 15 indicates that a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court has articulated the liberal policy of allowing amendments underlying Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

In considering these factors, Judge Schneider found that allowing amendment would not unduly delay the case.  He also found that the interests of justice weigh in favor of amendment, because Plaintiff has not been able to determine why Equifax ultimately corrected his account on February 14, 2013, and may not know why until he gets BOA's documents and version of the story.  Equifax does not argue that any bad faith or dilatory motive existed on Plaintiff's part, but does argue that Judge Schneider erred in finding an absence of prejudice and undue delay.

Equifax argues that permitting the amendment would prejudice it by increasing the cost of defending the case.  Def.'s Appeal Br. at 13.  That is not the kind of prejudice, however, that should result in denial of leave to amend.  See Adams v. Gould, Inc., 739 F.2d 858, 869 (3d Cir. 1984) (finding that additional litigation costs alone are not sufficient prejudice to deny a motion

---

pleadings would be made by August 1, 2013.  The additional delay is discussed in this Opinion in the context of Rule 15.

to amend).  Rather, courts should analyze whether amendment would cause burdensome new discovery or trial preparation.  Cureton v. NCAA, 252 F.3d 267, 275-76 (3d Cir. 2001).

Judge Schneider made findings as to prejudice and found that no "unfair disadvantage" would accrue to Equifax as a result of amendment.  See In re Bristol-Myers Squibb Sec. Litig., 228 F.R.D. 221, 228 (D.N.J. 2005).  This Court agrees, particularly in light of the fact that the Court now decides the summary judgment motion in favor of Equifax, as explained in the next section of this Opinion.

Finally, Equifax argues that Judge Schneider should have found undue delay as a result of Plaintiff's waiting until February 28, 2014 to file his motion.  It also argues that Third Circuit law "overwhelmingly" supports denial of leave to amend on the grounds of undue delay when the motion to amend is filed after the opposing party has moved for summary judgment. However, all of the cases it cites affirm denials of leave to amend, highlighting the discretion of the district or magistrate judge in determining whether to grant such leave.  See Sander v. Light Action, Inc., 525 F. App'x 147, 152 (3d Cir. 2013) (affirming denial of leave to amend six weeks before trial, because "it was within the district court's discretion to deny leave to amend."); In re Madera, 586 F.3d 228, 234 (3d Cir. 2009) (affirming denial of leave to amend where new claims were futile and not based on new evidence); Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116-17 (3d Cir. 2003) (district court did not abuse discretion in denying a third motion to amend after granting two such previous motions, where the district court found that the motion appeared dilatory).  Equifax has not, however, cited law from any jurisdiction where a court reversed a decision granting leave to amend.  Indeed, as one court in this district recently observed "it is . . . rare, if not unheard of, for a litigant to appeal an order granting a motion to amend."  Kaplan v. GreenPoint Global, Civ. No. 11-4854, 2013 WL 4009035, at *2 (D.N.J. Aug. 5, 2013).  Thus,

reviewing Judge Schneider's order for clear error, this Court finds that the order was not contrary to any clear and established law, and should be affirmed.

## IV.     SUMMARY JUDGMENT

### A.  FCRA Claims

The FCRA "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 708 (3d Cir. 2010) (quoting Guimond v. Trans Union Credit Info Co., 45 F.3d 1329, 1333 (9th Cir. 1995)). The FCRA contains "provisions intended to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." Id. (citations omitted). The "consumer oriented objectives" of the FCRA "support a liberal construction" of this statutory scheme. Id.

Plaintiff asserts violations of two different provisions of the FCRA, 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i. The former relates to the reporting of credit information, while the latter relates to a credit agency's reinvestigations of disputed information. Both provisions require more than a mere inaccuracy. A violation of § 1681e(b) requires a plaintiff to demonstrate four elements:

> (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.

Cortez, 617 F.3d at 708 (quoting Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996)). Thus, credit reporting agencies are not "strictly liable" for inaccuracies in their reports. Philbin, 101 F.3d at 964-65 (quoting Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991)). Rather, some "quantum of evidence beyond a mere inaccuracy" is

required for a jury to find that a defendant did not follow reasonable procedures to ensure

maximum possible accuracy.  Cortez, 617 F.3d at 709.

Although Equifax argues that Plaintiff has the burden of demonstrating a lack of

reasonable procedures, the Third Circuit has indicated that it has not determined whether the

burden remains with the plaintiff as to all elements, or whether "upon demonstrating an

inaccuracy, the burden shifts to the defendant to show that reasonable procedures were

followed." Cortez, 617 F.3d at 710.  The Court need not decide who bears the burden of

showing that a credit reporting agency followed reasonable procedures, however, because

Equifax would prevail under either approach.  Equifax has produced evidence that it relies on

BOA to accurately report the accounts of its customers.  (Decl. of Latonya Munson ("Munson

Decl.") ¶ 18.)  In particular, it is clear that the information that it reported was obtained from

BOA, particularly in light of BOA's re-affirmance of the alleged accuracy of the information on

seven separate occasions.  (SUMF ¶¶ 30-45.)  Despite his access to discovery, Plaintiff has

produced no evidence that Equifax fashioned the allegedly inaccurate information itself or

obtained it from any other source besides BOA.

Having found that there is no dispute that Equifax obtained the reported information from

BOA, the Court also finds that reliance upon Bank of America is reasonable.  "In the absence of

notice of prevalent unreliable information from a reporting lender . . . such a requirement to

investigate" would not be reasonable, "given the enormous volume of information" processed

every day by a credit reporting agency such as Equifax.  O'Brien v. Equifax Information Servs.,

LLC, 382 F. Supp. 2d 733, 738 (E.D. Pa. 2005) (quoting Sarver v. Experian Information

Solutions, 390 F.3d 969, 972 (7th Cir. 2004)).

12

The second provision of the FCRA that Plaintiff alleges Equifax violated, § 1681i, relates to a credit reporting agency's reinvestigation of disputes.  This section of the FCRA requires a credit reporting agency to:

> conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a).  Plaintiff alleges that Equifax violated § 1681i by not adequately investigating his BOA mortgage account after he asserted that his credit report was inaccurate.  Plaintiff has not submitted any evidence as to the reasonableness of Equifax's investigation.  However, Equifax has demonstrated that it investigated each of his disputes by sending an ACDV Form to BOA, requesting that it reinvestigate the account on each occasion.  (SUMF ¶¶ 30-45.)  As a result, a BOA employee completed each ACDV Form and returned it to Equifax, repeatedly indicating that the account was correctly reporting an "unpaid balance reported as a loss by [BOA] (charge-off)." (Munson Decl. Exs. B, E, G, H, J, M.)

Numerous courts have found that the ACDV process is reasonable.  See Birmingham v. Experian Info. Solutions, Inc., 633 F.3d 1006, 1012 (10th Cir. 2011) (finding that credit reporting agency's "standard procedures appear reasonable" where it contacts the source of disputed information and either "leaves the item as is, deletes it, or changes it in a manner specified by the source" after receiving a response); Morris v. Trans Union LLC, 420 F. Supp. 2d 733, 754-56 (S.D. Tex. 2006), aff'd, 224 F. App'x 415 (5th Cir. 2007) (finding that "[t]he use of an ACDV form is an accepted method of communicating the detail of a consumer dispute"); Benson v. Trans Union, LLC, 387 F. Supp. 2d 834, 843 (N.D. Ill. 2005) (finding that transmitting an ACDV form to the reporting creditor to verify that the reported information was accurate is an adequate means of investigating a dispute).  A credit reporting agency must

13

"review and consider all relevant information submitted by the consumer."  15 U.S.C. §
1681i(a)(4).  However, the Court is aware of no law indicating that such an agency is required to
disbelieve a reporting creditor when it responds to an ACDV by reporting that the reported
information is accurate, or to conduct an independent investigation into the underlying
information.

It is clear from the evidence in the record that Plaintiff disputes that the BOA account
should have been reported as charged-off, with a balance still owed to BOA, while BOA
repeatedly affirmed that the balance was still owed, and was in fact charged off.  Plaintiff takes
issue with the reasonableness of Equifax's investigation, arguing that it did not make BOA
"prove" whether or not he actually continued to owe a balance on his mortgage loan.  Pl.'s
Opp'n at 8.  However, a credit reporting agency is not required to referee a dispute between a
consumer and lender.  See DeAndrade v. Trans Union LLC, 523 F.3d 61, 69 (1st Cir. 2008) ("A
credit reporting agency has no duty, as a part of its reinvestigation, to go behind public records to
check for accuracy or completeness when a consumer is essentially collaterally attacking the
underlying credit information.") (citing Williams v. Colonial Bank, 826 F. Supp. 415, 418 (M.D.
Ala. 1993)).  The "reasonable investigation" required by the FCRA "consists largely of
triggering the investigation by the furnisher."  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d
1147, 1156 (9th Cir. 2009.  This is because the "furnisher of credit information stands in a far
better position to make a thorough investigation of disputed debt" than a credit reporting agency.
Id. at 1017.

Plaintiff further argues that Equifax did not follow reasonable procedures for
investigating a dispute because two other leading credit reporting agencies, Experian and Trans
Union, allegedly reported Plaintiff's real estate transaction as a "short sale."  Pl.'s Opp'n at 4.

However, he has not provided any evidence that the other agencies reported his account differently, such as by including those alleged credit reports as exhibits.[5]  Therefore, even if the information contained in Plaintiff's report was inaccurate, he has not satisfied the required elements of an FCRA claim.  The evidence shows that even if an inaccuracy existed, Equifax did not fail to follow reasonable procedures in obtaining the information, which is fatal to his § 1681(e) claim.  Further, he has not produced any evidence to show that Equifax failed to follow reasonable procedures in investigating his disputes, as § 1681i requires.  Summary judgment must therefore be granted in favor of Equifax.[6]

### B.  State-Law Claims

Equifax argues that the state-law claims asserted by Plaintiff are preempted by the FCRA. The Court agrees, and thus summary judgment will be granted on these claims also.

The FCRA is a comprehensive scheme designed by Congress to regulate the credit reporting industry.  See Cintron v. Savit Enters., Civ. No. 07-4389, 2009 WL 971406, at *2 (D.N.J. Apr. 9, 2009) (the FCRA creates a "comprehensive regulatory scheme[]").  Consumers alleging violations of that statutory scheme must bring their entire action under the FCRA.  The

---

[5] Plaintiff does include an exhibit which shows that he filed a dispute with Trans Union, and that Trans Union deleted disputed information from his file.  (Declaration of Joseph Serfess Ex. 7.)  However, it does not show what the nature of the disputed report was, or how Plaintiff's credit report appeared after the dispute was resolved.

[6] Because of the findings expressed in this section, the Court need not reach Equifax's argument that Plaintiff did not sustain any damages.  Plaintiff asserts that he was denied loans for two other properties as a result of the inaccurate report in his Equifax file.  Pl.'s Opp'n at 2.  However, he provides nothing more than his own declaration in support of his assertion, and it is not clear that Plaintiff would have personal knowledge as to why creditors denied him credit.  See Aronson v. Peoples Natural Gas Co., 180 F.3d 558, 564 n.2 (3d Cir. 1999) (admissible evidence on summary judgment must be based upon personal knowledge).  Plaintiffs may recover for emotional distress and loss of reputation as a result of false information in a credit report under an FCRA cause of action, even in the absence of direct proof of being turned down for credit as a result. See Dalton v. Capital Assoc. Indus, Inc., 257 F.3d 409, 418 (4th Cir. 2001); Cousin v. Trans Union Corp., 246 F.3d 359, 369 n.15 (5th Cir. 2001).  However, numerous courts have found that more is necessary than merely an assertion by the plaintiff that he suffered these types of damages.  See, e.g., Neclerio v. Trans Union, LLC, 983 F. Supp. 2d 199, 215 (D. Conn. 2013); Reed v. Experian Information Solutions, Inc., 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004); Edeh v. Equifax Information Servs., LLC, 974 F. Supp. 2d 1220, 1242 (D. Minn. 2013), aff'd, 2014 WL 1851001 (8th Cir. 2014).  Although the Court need not decide this issue, it is not clear that Plaintiff has made such a showing.

statue explicitly prohibits consumers from "bringing any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  The statute thus preempts the three common-law causes of action asserted by Plaintiff, unless he can make the state-of-mind showing provided for by § 1681h.

The statutory requirement of "malice or willful intent to injure contemplated by § 1681h(e) is of a higher degree than that which supports a claim of statutory or punitive damages under § 1681n."  Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1117 (D. Minn. 2004).  Thus, a plaintiff asserting common law causes of action for the same facts underlying an FCRA claim must produce "evidence proving the key element of malice," which is that the defendant "knew the [disputed] information was incorrect at the time of reporting."  Ross v. F.D.I.C., 625 F.3d 808, 814 (4th Cir. 2010).

Here, Plaintiff has not pointed to any evidence that Equifax acted with the requisite malice.  At his deposition, he indicated that he did not have any reason to believe that Equifax intended to harm him personally.  (Serfess Dep. at 45:13-15, Certification of Debra M. Albanese Ex. A).  Although Plaintiff filed a brief in opposition to summary judgment and set forth arguments in connection with his FCRA claim, he does not address the state-law causes of action at all in his brief.  Thus, the Court finds that summary judgment must also be granted in favor of Equifax on Counts Two, Three, and Four, respectively, for defamation, invasion of privacy, and negligence.

**V.      CONCLUSION**

For the reasons expressed herein, Equifax's appeal will be **DENIED**, and its motion for summary judgment will be **GRANTED**.  An accompanying Order shall issue.

Dated: 8/28/2014                                                  s/ Robert B. Kugler
                                                                        ROBERT B. KUGLER
                                                                        United States District Judge

17