## DISTRICT COURT FOR THE UNITED STATES
## FOR THE DISTRICT OF NEW JERSEY--CAMDEN DIVISION

Joseph Serfess
314 Lakewood Terrace
Newton, New Jersey 07860
(973) 289-7078

| | |
|---|---|
| Joseph Serfess, | : Civil Action No. 1:13-cv-00406 (RBK)(JS) |
| Plaintiff, | **NOTICE OF MOTION**<br>**F.R.CIV.P. 60(b)(1),(2),(3),(4)&(6)** |
| vs. | **TO REINSTATE ALL CLAIMS**<br>**AGAINST DEFENDANT EQUIFAX,**<br>**FOR ACTS OF RETALIATION**<br>**AGAINST PLAINTIFF,**<br>**AND FOR ACTING IN CONCERT**<br>**WITH DEFENDANTS BANK OF**<br>**AMERICA & BANK OF AMERICA,**<br>**N.A. ("BANA"), & GRANTING**<br>**SUMMARY JUDMENT IN FAVOR OF**<br>**PLAINTIFF *SUA SPONTE*** |
| EQUIFAX CREDIT INFORMATION SERVICES,:<br>LLC., BANK OF AMERICA, BANK OF<br>AMERICA, N.A. | : Return Date: February 10, 2015 @11:00am<br>Oral Argument REQUESTED |
| Defendants. | |

**TO:** CLERK OF THE COURT

Deborah Albanese, Esq.
c/o Traflet & Fabian
264 South Street, Carriage Court Two
Morristown, New Jersey 07960
(Attorneys for Defendant Equifax)(sent via US Priority Mail)

Robert E. Warring, Esq.
c/o Reed Smith
2500 Liberty Pl.
Philadelphia, PA 19103
(Attorneys for Defendant Bank of America; BANA)

**RECEIVED**

**JAN 14 2015**

AT 8:30_____M
WILLIAM T. WALSH      CLERK

**PLEASE TAKE NOTICE** that Plaintiff, Joseph Serfess will move pursuant to Fed. R.

Civ. P. Rule 60 (b)(1), (2), (3), (4), & (6) to reinstate all claims in his Complaint as against Defendant Equifax for acts of retaliation against Plaintiff, and for acting in concert with Defendants Bank of America and Bank of America, N.A., ("BANA"), and granting Summary Judgment in favor of Plaintiff, *sua sponte*, before the District Court of the United States, Mitchell H. Cohen United States Courthouse, 1 John F. Gerry Plaza, Fourth & Cooper Streets, Camden, New Jersey 08101, seeking entry of an Order pursuant to Federal Rule of Civil Procedure 60 (b) (1), (2), (3), (4), & (6) relief from judgment or order dismissing Equifax as a Defendant Party in the case, and granting summary judgment against all Defendants as addressed in Plaintiff's prior motion for summary judgment against Defendants Bank of America and BANA.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff will rely upon his attached Declaration of Joseph Serfess, and Letter Memorandum of Law, in support of motion.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Order is enclosed.

**ORAL ARGUMENT REQUESTED.**

Dated: January 13, 2015

Joseph Serfess
314 Lakewood Terrace
Newton, New Jersey 07860
(973) 289-7078

## DISTRICT COURT FOR THE UNITED STATES
## FOR THE DISTRICT OF NEW JERSEY--CAMDEN DIVISION

Joseph Serfess
314 Lakewood Terrace
Newton, New Jersey 07860
(973) 289-7078

| | |
|---|---|
| Joseph Serfess, | : Civil Action No. 1:13-cv-00406 (RBK)(JS) |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| | : **CERTIFICATION OF SERVICE** |
| vs. | : |
| | : |
| | : |
| | : |
| EQUIFAX CREDIT INFORMATION SERVICES, | : |
| LLC., BANK OF AMERICA, BANK OF | : Return Date: February 10, 2015 at 11:00am |
| AMERICA, N.A. | : Oral Argument REQUESTED |
| | : |
| Defendants. | : |
| | : |

I, Joseph Serfess, certify as follows:

1. I served an Original and two (2) copies of the Notice of Motion for Summary

Judgment As Against Defendant Bank of America and Bank of America, N.A., pursuant to Fed.

R. Civ. P. Rule 60 (b) (1), (2), (3), (4), & (6) to reinstate all claims in his Complaint as against

Defendant Equifax for acts of retaliation against Plaintiff, and for acting in concert with

Defendants Bank of America and Bank of America, N.A., ("BANA"), and granting Summary

Judgment in favor of Plaintiff, *sua sponte*, with and supporting Declaration of Joseph Serfess,

and Letter Memorandum upon the Clerk, United States District Court, Mitchell H. Cohen, U.S.

Courthouse, 1 John F. Gerry Plaza, 4th & Cooper Sts., Camden, N.J. 08101 by FEDEX.

2. I served a copy of the same documents upon attorneys for Defendant Bank of

America; BANA, Robert E. Warring, Esq., c/o Reed Smith, 2500 Liberty Pl., Philadelphia, PA 19103 by U.S. Priority Mail.

      3.  I served a copy of the same documents upon attorneys for Defendant Equifax, Deborah Albanese, Esq., c/o Traflet & Fabian, 264 South Street, Carriage Court Two, Morristown, New Jersey 07960 by US Priority Mail.

      I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  January 13, 2015

Joseph Serfess

## DISTRICT COURT FOR THE UNITED STATES
## FOR THE DISTRICT OF NEW JERSEY--CAMDEN DIVISION

Joseph Serfess
314 Lakewood Terrace
Newton, New Jersey 07860
(973) 289-7078

| | |
|---|---|
| Joseph Serfess, | : Civil Action No. 1:13-cv-00406 (RBK)(JS) |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| | : **ORDER** |
| | : |
| EQUIFAX CREDIT INFORMATION SERVICES,: | |
| LLC.,  BANK OF AMERICA, BANK OF | : |
| AMERICA, N.A. | : |
| | : |
| Defendants. | : |
| | : |

**TO:**   CLERK OF THE COURT

Deborah Albanese, Esq.
c/o Traflet & Fabian
264 South Street, Carriage Court Two
Morristown, New Jersey 07960
(Attorneys for Defendant Equifax)(sent via US Priority Mail)

Robert E. Warring, Esq.
c/o Reed Smith
2500 Liberty Pl.
Philadelphia, PA 19103
(Attorneys for Defendant Bank of America; BANA)

**THIS MATTER** having been brought before the District Court by Plaintiff, Joseph

Serfess pursuant to Fed. R. Civ. P. Rule 60 (b) (1), (2), (3), (4), & (6) to reinstate all claims in his

Complaint as against Defendant Equifax for acts of retaliation against Plaintiff, and for acting in

concert with Defendants Bank of America and Bank of America, N.A., ("BANA"), and granting

summary judgment in favor of Plaintiff, *sua sponte*, and the Court having read the submissions

by Plaintiff and Defendants, and having heard oral argument, for good cause shown;

      IT IS on this _____ day of _____, 2015,

      ORDERED that Equifax is reinstated as a Defendant party in this case for reasons stated

in the Court's Decision.

 

                                  _____

                                                      U.S.D.J.

Joseph Serfess
314 Lakewood Terrace
Newton, New Jersey 07860
(973) 289-7078

| | |
|---|---|
| Joseph Serfess, | : Civil Action No. 1:13-cv-00406 (RBK)(JS) |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| | : |
| | : **DECLARATION OF** |
| | : **JOSEPH SERFESS** |
| | : |
| VS. | : |
| | : |
| EQUIFAX CREDIT INFORMATION SERVICES, | : |
| LLC., BANK OF AMERICA, BANK OF | : Return Date: February 10, 2015 at 11:00am |
| AMERICA, N.A. | : Oral Argument REQUESTED |
| | : |
| Defendants. | : |
| | : |

I, Joseph Serfess, hereby declare:

1.  On or about December 10th, 2014, Plaintiff applied for an increase in his credit card

limit on his Bloomingdale's account in order to buy furniture. Plaintiff requested an increase

from his original credit limitof $1,500.00 to $5,000.00, a $3,500.00 increase request. Plaintiff's

credit score was 743. A true copy of the credit increase letter from Bloomingdale's is attached

hereto as **EXHIBIT #1**.

2.  To his surprise, Plaintiff was denied his request for a credit increase because of

information Bloomingdale's received on information obtained from a consumer reporting

agency, namely Equifax Credit Info Services.

3.       On or about December 13, 2014, Plaintiff received a letter from Bloomingdale's

1

indicating he was denied an increase in his credit limit, and that Bloomingdale's used information obtained from Equifax Credit Info Services. Based on the information obtained, there was no mention of the other two (2) credit reporting agencies, Experian and TransUnion.

4.      On December 31, 2014, Plaintiff contacted Equifax Office of Consumer Affairs to get information why he was being denied a credit increase, or any credit, when his credit score was very high (743). He got no satisfactory response from Equifax Consumer Affairs. He contacted Equifax Offices again on January 2, 2015 at about 12:27 p.m. He was given no response. On January 5, 2015, Plaintiff contacted Equifax's Offices again, and spoke with Kyle who told him to contact a "Mr. Chin". Plaintiff contacted "Mr. Chin" and was told to send him a letter of complaint, along with a copy of his driver's license and copy of his Social Security card. Plaintiff told "Mr. Chin" that he had already sued Equifax for defrauding Plaintiff and other causes of action. Plaintiff refuses to send a copy of his Social Security number, since they have all of Plaintiff's information on his account, and it is a further run-around being done by Equifax.

5.      Plaintiff finally obtained an increase in his credit limit through Bloomingdale's. Customer service at Bloomingdale's could not understand why Plaintiff had a 743 credit score but was being denied credit by Equifax.

6.      Plaintiff contends that Equifax and Bank of America is retaliating against Plaintiff for suing them. Given that it appears that Bank of America has not corrected the information it is sending to Equifax, or has reinstated the incorrect information to Equifax, and Equifax was aware that this information was incorrect, it is appearing that both Equifax and Bank of America are defrauding and defaming Plaintiff with false information to deprive Plaintiff of credit and deleteriously affect his credit rating. This is a violation of the Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA"), and fraud, defamation, intentional

2

infliction of emotional distress, and other causes of action that Plaintiff has argued and addressed in his pleadings, briefs, and petitions to this Court, *ad nauseum*.

7.  Plaintiff seeks to reinstate Equifax as a Defendant after they were dismissed in a motion for summary judgment on August 28, 2014. The fraud, deception, misrepresentation, and misconduct committed by Equifax and Bank of American and BANA, dictates that the Ruling on August 28, 2014, (Docs. #60, 61) to dismiss Equifax as a Defendant on summary judgment must be set aside and Equifax be reinstated as a Defendant.

8.  Also, Plaintiff's Motion for Summary Judgment against Defendants BOA and BANA, along with Equifax after being reinstated, be granted *sua sponte*.

Pursuant to 28 U.S.C. §1746, I further declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of January, 2015, in Newton, New Jersey.

By: _____

Joseph Serfess
314 Lakewood Terrace
Newton, New Jersey 07860
(973) 289-7078

# EXHIBIT #1

# bloomingdale's

P. O. Box 8228
Mason, OH 45040-5228

00002824 BB CCC 346 ASCMXLNP AM1          083
Joseph Serfess
314 Lakewood Ter
Newton, NJ 07860-7002

December 11, 2014

RE: xxxxxxx2309

Dear Joseph Serfess:

Thank you for shopping at Bloomingdale's. This letter is to notify you that we were recently unable to either: authorize a Bloomingdale's purchase, increase the credit limit on your account, or approve your request to reopen your account.

If you would like a statement of specific reasons why your request was denied, please contact us at the address or phone number shown below within sixty (60) days of this letter. We will provide you with the statement of reasons within thirty (30) days after receiving your request. If you contact us in writing, please include a copy of this letter.

Bloomingdale's Credit Department
P.O. Box 8228
Mason, OH 45040
1-800-950-0339

If our credit decision was based in whole or in part on information obtained in a report from a consumer reporting agency, that agency will be listed below. The consumer reporting agency did not make this decision and is unable to give you the specific reasons why we took this action. Under the Fair Credit Reporting Act you have the right to obtain a free copy of your file at the consumer reporting agency if you request it within sixty (60) days after you receive this letter. You also have the right to dispute the accuracy or completeness of any such information with the consumer reporting agency.

Equifax Credit Info Services
P O BOX 740241
Atlanta, GA 30374-0241
1-800-685-1111
www.Equifax.com/fcra

Information about Your Credit Score

We also obtained your credit score from Equifax and used it in making our credit decision. Your score is a number that reflects the information in your credit report. Your score can change, depending on how the information in your credit report changes.

ABX02 - 72

**bloomingdale's**

Score: 743
Date: October 28, 2014
Scores range from a low of 250 to a high of 900

Key factors that adversely affected your score:
• Serious delinquency
• Proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high
• Length of time accounts have been established
• Proportion of loan balances to loan amounts is too high


Sincerely,

Credit Department

The Bloomingdale's Card is issued by Department Stores National Bank.
* Please see the important disclosure for Department Stores National Bank on page 2.



**DISTRICT COURT FOR THE UNITED STATES
FOR THE DISTRICT OF NEW JERSEY--CAMDEN DIVISION**

Joseph Serfess
314 Lakewood Terrace
Newton, New Jersey 07860
(973) 289-7078

| | |
|---|---|
| Joseph Serfess, | : Civil Action No. 1:13-cv-00406 (RBK)(JS) |
| | : |
| | : |
| Plaintiff, | : |
| | : **NOTICE OF MOTION** |
| | : **F.R.CIV.P. 60(b)(1),(2),(3),(4)&(6)** |
| vs. | : **TO REINSTATE ALL CLAIMS** |
| | : **AGAINST DEFENDANT EQUIFAX,** |
| | : **FOR ACTS OF RETALIATION** |
| | : **AGAINST PLAINTIFF,** |
| | : **AND FOR ACTING  IN CONCERT** |
| | : **WITH DEFENDANTS BANK OF** |
| | : **AMERICA & BANK OF AMERICA,** |
| | : **N.A. ("BANA"), AND GRANTING** |
| | : **SUMMARY JUDGMENT IN FAVOR** |
| | : **OF PLAINTIFF, SUA SPONTE** |
| EQUIFAX CREDIT INFORMATION SERVICES,: | |
| LLC.,  BANK OF AMERICA, BANK OF | : Return Date: February 10, 2015 @11:00am |
| AMERICA, N.A. | : Oral Argument REQUESTED |
| | : |
| Defendants. | : |
| | : |

---

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REINSTATE EQUIFAX AS A
DEFENDANT PARTY FOR RETALIATION AGAINST PLAINTIFF, PURSUANT TO
F.R.CIV.P. RULE 60(b) (1), (2),(3), (4), & (6), & GRANTING SUMMARY JUDGMENT
IN FAVOR OF PLAINTIFF, *SUA SPONTE***

1

## FACTS

On or about December 10th, 2014, Plaintiff applied for an increase in his credit card limit on his Bloomingdale's account in order to buy furniture. Plaintiff requested an increase from his original credit limit of $1,500.00 to $5,000.00, a $3,500.00 increase request. Plaintiff's credit score was 743.

To his surprise, Plaintiff was denied his request for a credit increase because of information Bloomingdale's received on information obtained from a consumer reporting agency, namely Equifax Credit Info Services.

On or about December 13, 2014, Plaintiff received a letter from Bloomingdale's indicating he was denied an increase in his credit limit, and that Bloomingdale's used information obtained from Equifax Credit Info Services. Based on the information obtained, there was no mention of the other two (2) credit reporting agencies, Experian and TransUnion.

On December 31, 2014, Plaintiff contacted Equifax Office of Consumer Affairs to get information why he was being denied a credit increase, or any credit, when his credit score was very high (743). He got no satisfactory response from Equifax Consumer Affairs. He contacted Equifax Offices again on January 2, 2015 at about 12:27 p.m. He was given no response. On January 5, 2015, Plaintiff contacted Equifax's Offices again, and spoke with Kyle who told him to contact a "Mr. Chin". Plaintiff contacted "Mr. Chin" and was told to send him a letter of complaint, along with a copy of his driver's license and copy of his Social Security card. Plaintiff told "Mr. Chin" that he had already sued Equifax for defrauding Plaintiff and other causes of action. Plaintiff refuses to send a copy of his Social Security number, since they have all of Plaintiff's information on his account, and it is a further run-around being done by Equifax.

2

Plaintiff finally obtained an increase in his credit limit through Bloomingdale's. Customer service at Bloomingdale's could not understand why Plaintiff had a 743 credit score but was being denied credit by Equifax.

Plaintiff contends that Equifax and Bank of America is retaliating against Plaintiff for suing them. Given that it appears that Bank of America has not corrected the information it is sending to Equifax, or has reinstated the incorrect information to Equifax, and Equifax was aware that this information was incorrect, it is appearing that both Equifax and Bank of America are defrauding and defaming Plaintiff with false information to deprive Plaintiff of credit and deleteriously affect his credit rating. This is a violation of the Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA"), and fraud, defamation, intentional infliction of emotional distress, and other causes of action that Plaintiff has argued and addressed in his pleadings, briefs, and petitions to this Court, *ad nauseum*.

Plaintiff has overnighted a request for his free copy of his file from Equifax within the 60 day time period as required under the Fair Credit Reporting Act ("FCRA").

Plaintiff now moves, pursuant to Fed.Civ.R.Proc. Rule 60 (b) (1), (2), (3), (4), & (6), to vacate this Court's Order dismissing Equifax as a Defendant in the case, and seeks to reinstate Equifax Credit Information Services as a Defendant in the above-captioned lawsuit based on this newly discovered evidence of retaliation by Equifax and Bank of America. Plaintiff also seeks to have this Court grant him summary judgment, *sua sponte*, as the evidence shows Defendants Equifax and Bank of America have lied to this Court and falsely represented that they fixed the Plaintiff's credit reporting problems pursuant to the FCRA and is presently further damaging his credit rating, and defaming him publicly in the process.

3

Once again, based on the previous applications, pleadings and briefs submitted in this Court, the furnisher of credit information, Defendants Bank of America and BANA, and the credit reporting agency, Defendant Equifax, have lied and made serious false representations to this Court. Equifax was dismissed from the case on the basis they allegedly "fixed" the problem. Apparently they never "fixed" the problem and are acting in concert with Bank of America and BANA to harm Plaintiff's credit rating, thus, affecting his life, his property and his privacy. Plaintiff has now been defamed and Defendants Bank of America, BANA, and Equifax have no defenses to this latest act of defrauding Plaintiff. Equifax argued that they weren't responsible for Defendant Bank of America's/BANA's information that was furnished. This was a lie and a misrepresentation, not to mention misconduct by Equifax and its counsel. Equifax allegedly fixed the problem after 12 disputes filed by Plaintiff and Plaintiff having sued Equifax and then amending his Complaint to include Bank of America and BANA as defendants.

This motion is one for relief pursuant to the Federal Rules of Civil Procedure, Rule 60(b), relief from judgment under surprise, newly discovered evidence, fraud, deception, misrepresentations, and misconduct by the Defendants and/or their counsel. The motion is also being brought under the "catch-all provision in Rule 60(b)(6) that allows a court to relieve a party from a judgment for 'any other reason that justifies relief' aside from the more specific circumstances described in Rules 60(b)(1)–(6)." *Budget Blinds, Inc. v. White, 536 F.3d 244, 251 (3d Cir. 2008)*. The fraud, deception, misrepresentation, and misconduct committed by Equifax and Bank of American and BANA, dictates that the Ruling on August 28, 2014, (Docs. #60, 61) to dismiss Equifax as a Defendant on summary judgment must be set aside. As the district courtexplained in *United States v. International Telephone & Telegraph Corp., 349F.Supp. 22, 29 (D.Conn.1972), aff'd without opinion, 410 U.S. 919, 93 S.Ct. 1363,35 L.Ed.2d 582 (1973):*

4

Generally speaking, the fabrication of evidence by a party in which an attorney is

implicated, will constitute a fraud on the court. See *Hazel-Atlas Glass Co. v. Hartford-Empire*

*Co., 322U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); Root Refin. Co. v. Universal Oil Products,*

*169 F.2d 514 (3d Cir. 1948) 7 J. Moore, Federal Practice, ¶ 60.33 at 510-11. Wright & Miller*

comments further on the nature of the "special showing" necessary under subsection 6: "In

general, relief is given under clause 6 in cases in which the judgment was obtained by the

improper conduct of the party in whose favor it was rendered Defendants in both state and

federal Courts worked a fraud upon the Court to obtain judgments in their favor. *See Bulloch v.*

*United States, 763 F.2d 1115, 1121 (10th Cir. 1985)*, held the following:

—Fraud on the court…is directed to the judicial machinery itself.

…

*H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co., 536 F.2d 1115 (6th Cir.).* It is thus fraud

where the court or a member is corrupted or influenced or influence is attempted or where

the judge has not performed his judicial function--thus where the impartial functions of the court

have been directly corrupted.

"Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on
the court." *Porter, 536 F.2d at 1119.*

"Where Rule 60(b)(4) is properly invoked on the basis that the underlying judgment is

void, "'relief is not a discretionary matter; it is mandatory.'" *Orner v. Shalala, 30 F.3d 1307,*

*1310 (10th Cir. 1994) (quoting V.T.A., Inc. v. Airco, Inc.,597 F.2d 220, 224 n.8 (10th Cir.*

*1979)*).

Reinstatement of a case is controlled by the standards articulated in Federal Rule of Civil

Procedure 60(b). *Sawka v. Healtheast, Inc., 989 F.2d 138 (3d Cir. 1993).* In the Third Circuit,

rule 60(b) motions are viewed as "extraordinary relief which should be granted only where

5

extraordinary justifying circumstances are present." *Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991).*

The purpose of Rule 60 is "to strike a proper balance between conflicting principles that litigation must be brought to an end **_and_** that justice must be done." *Boughner v. Sec. of Health, Educ. & Welfare, 572 F.2d 976, 977 (3d Cir.1978).* Accordingly, motions for relief under Rule 60(b) are directed to the sound discretion of the trial court and must be considered on equitable principles.

Rule 60(b)(3) allows a court to relieve a party from a final judgment due to "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." See Fed. R. Civ. P. 60(b)(3). "The purpose of the rule is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect." *Favors v. U.S., 2004 WL 1631417, at \*2 (E.D. Pa. July 21, 2004) (citing Diaz v. Methodist Hospital, 46 F.3d 492, 496 (5th Cir. 1995)).*

## Legal Standard

**Rule 60(b)** of the Federal Rules of Civil Procedure provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b).

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

6

(6) any other reason that justifies relief.

As Plaintiff's motion, brief, and reply advance arguments related to "surprise" under Rule 60(b)(1) and "newly discovered evidence" under Rule 60(b)(2), Plaintiff will address each separately.

**Rule 60(b)(1)--** "Surprise". As addressed above, Plaintiff was taken by surprise to find his credit rating had been compromised by Defendant Equifax, and ultimately Defendants Bank of America and BANA despite the fact Plaintiff had a 743 credit rating, but told the party seeking the credit rating that Plaintiff should not be given credit based on several factors. This after Plaintiff had disputed the improper credit report for over 2 years, and finally sued Equifax and now Bank of America/BANA. According to Equifax and Bank of America corporate officers, which Plaintiff cannot get discovery on what was said between them, after asking for it several times through notices to produce during discovery, the corporate officers allegedly corrected the fraudulent misinformation on Plaintiff's credit report furnished by Defendant Bank of America. Defendants had put down on Plaintiff's credit report he had a foreclosure, when the totality of the proof and evidence showed that Plaintiff did a short sale, which said short sale was approved by Defendant Bank of America/BANA. Based on the conduct of Bank of America/BANA, they attempted to extort the total amount of the money owed on Plaintiff's short sale, even after Bank of America/BANA agreed to the contract to accept a short sale. This is a problem throughout the credit reporting industry with many short sale victims. To his surprise, Plaintiff's person and property were harmed and damaged as a result of this false, fraudulent, defamatory and libelous information being disseminated by Equifax and Bank of America/BANA again. This after Equifax and Bank of America/BANA told this District Court

7

that the problem had been addressed and taken care of. This was **_not_** a matter of excusable neglect. To determine whether neglect is excusable under Rule 60(b)(1), the Court must "take into account the totality of the circumstances." *Ethan Michael, 392 F. App'x at 909 (citing In re Cendant Corp., 235 F.3d 176, 182 (3d Cir. 2000))*. Essentially, the determination of whether neglect is excusable is an equitable one, and requires consideration of the risk of prejudice to the non-movant, the length of the delay, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *See George Harms Constr., 371 F.3d at 163-64 (quoting Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993))*.

**Rule 60(b)(2)**—"Newly discovered evidence". Under Rule 60(b)(2), in order for newly discovered evidence the Rule allows a Court to grant relief from judgment or order if (1) new evidence is must have been discovered after trial, (2) must be material to the issues involved, and (3) must be "of such a nature that it would probably change the outcome" of the case. *Stridiron v. Stridiron, 698 F.2d 204, 207 (3rd Cir. 1982)*. Plaintiff provides "newly discovered evidence" in the form of the December 11, 2014 Bloomingdale's credit increase rejection letter showing that Equifax was denying the increase in Plaintiff's credit. Plaintiff shows by clear and convincing evidence that Equifax has retaliated against Plaintiff for suing them in Federal District Court.

**Rule 60(b)(3) – fraud, misrepresentation, misconduct by the opposing party (and/or their attorney(s)**—Under Rule 60(b)(3)(fraud, misrepresentation, misconduct by opposing party (and/or their attorney(s)), this new evidence shows Defendants' state of mind to defraud the Court, and Plaintiff, and damage Plaintiff in his person and property, after lying to the District Court about fixing the problem. This goes to show the Court that Defendants Equifax and Bank of America/BANA had no intention of fixing the problem, lied to the District Court and

8

fabricated their story, are continuing to act in bad faith, and should be entitled to no relief whatsoever.

"Bad faith" generally implies or involves actual or constructive fraud, or a design to mislead or deceive another, or neglect or refusal to fulfill some duty or contractual obligation not prompted by some honest mistake as to one's rights or duties, but by some interested or sinister motive. *Black's Law Dictionary* 127 (5th Ed. 1979); as acts by a ... party that have been vexatious, wanton or carved out for oppressive reasons. *Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).* The federal courts have held that "bad faith" may be found not only in the actions that led to the lawsuit but in the conduct of the litigants" and, therefore, is not solely restricted to cases where the action is filed in bad faith. *Roadway Express Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).* "Bad faith" is defined as not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity and/or **moral turpitude**. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

**Rule 60(b)(4)** --Because of Defendants defrauding Plaintiff, the Order, under Rule 60(b)(4) granting Equifax summary judgment, is void on the basis of fraud and deception. Fraud vitiates everything. *Nudd v. Burrows, 91 U.S. 416 (1875).* Fraud destroys the validity of everything into which it enters. *Boyce's Executors v. Grund, 28 U.S. 210 (1830).* Fraud vitiates the most solemn contracts, documents and even judgments. *United States v. Throckmorton, 98 U.S. 61, 70 (1878).*

Plaintiff is showing the absence of any adequate remedy at law. *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 79 (5th Cir. 1970). The Supreme Court has further noted that an independent action in equity should be available only to prevent a grave miscarriage of justice. *United States v. Beggerly*, 524 U.S. 38, 47 (1998). The absence of any adequate remedy at law.   *In re Machne Israel, Inc.*, 48 F. App'x 859, 863 n.2 (3d Cir. 2002) (quoting *Nat'l Sur. Co. of N.Y. v. State Bank of Humboldt*, 120 F. 593, 599 (8th Cir. 1903)). "[A]n independent equitable action for relief from judgment may only be employed to prevent manifest

9

injustice." *Id.* at 863. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and *United States v. Beggerly*, 524 U.S. 38 (1998), this Court's leading recent discussions of fraud upon the court. The fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Id.* at 1338 (citing to *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997 (1944)). Thus, a "fraud on the court" is a fraud designed not simply to cheat an opposing litigant, but to "corrupt the judicial process"   or "subvert the integrity of the court."   *Oxxford Clothes XX, Inc. v. Expeditors Int'l, Inc.,* 127 F.3d 574, 578 (7th Cir. 1997); *Pumphrey v. K.W. Thompson Tool Co.,* 62 F.3d 1128, 1131 (9th Cir. 1995) (citation omitted); *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 460 (2d Cir. 1994). It is marked by an "unconscionable plan or scheme which is designed to improperly influence the court in its decisions,"*Dixon v. Commissioner,* No. 00-70858, 2003 U.S. App. LEXIS 4831, at *11-12 (9th Cir. Mar. 18, 2003), *amending* 316 F.3d 1041 (9th Cir. 2003), or by "egregious misconduct directed to the court itself." *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (citation omitted).

Fraud upon the court" as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication.*Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988) (citations omitted);*Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 460 (2d Cir., 1994). The concept of "fraud on the court" embraces "only that species of fraud which does, or attempts to, defile the court itself, *or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner* its impartial task of adjudging cases." *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (3d Cir. 1972) (citations omitted). *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (emphasis added).

**Rule 60(b)(6)**-- Rule 60(b)(6) is the most textually enigmatic of the six reasons for relief contained in Rule 60(b). The text of Rule 60(b)(6) merely provides for relief when "any other reason justif[ies] relief from the operation of the judgment."" Rule 60(b)(6) is frequently referred

to as a catch-all provision." Indeed, it should not be entirely surprising that this provision was the most controversial at the time of its adoption the natural fear being that the provision would grant courts limitless discretion." A number of courts have aptly described the catch-all provision as "a 'grand reservoir of equitable power to do justice in a particular case. Arguably of greater concern is the loss of prestige the judicial system suffers when a client's suit is dismissed solely because of the attorney's wrongdoing. *Carter v. Albert Einstein Med. Ctr., 804 F.2d 805, 808 (3d Cir. 1986).* As the court in Einstein Medical pointed out, such a dismissal reflects poorly upon the entire system because attorneys are officers of the court.' To put it slightly differently, "[w]hen an attorney is grossly negligent.., the judicial system loses credibility as well as the appearance of fairness, if... an innocent party is forced to suffer drastic consequences." *Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1170 (9th Cir. 2002).* The court in *Tani* properly required that a party seeking Rule 60(b)(6) relief display extraordinary circumstances preventing the proper litigation of the case. Instead of a mechanical, multipart test,' this test allows the court to consider the totality of the circumstances and make a proper judgment as to whether relief is appropriate.

Based on the aforementioned, Plaintiff's motion to reinstate Equifax as a Defendant in this case, pursuant to Fed.R.Civ.P. Rule 60(b) (1), (2), (3), (4) & (6) is proper and the Court should *sua sponte* reinstate Equifax as a Defendant. See *Link v. Wabash Railroad Co., 370 U.S. 626, 630-632 (1962).*

## DEFENDANTS BANK OF AMERICA & BANA'S OPPOSITION (DOC. #76) TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DISMISSED WITH PREJUDICE FOR BAD FAITH AND DEFRAUDING THIS COURT & PLAINTIFF

Contrary to Defendant Bank of America and Bank of America, N.A.'s Memorandum of Points and Authorities In Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 76), filed 10/20/2014, it is unequivocal that Equifax and BOA negligently failed to conduct a

reasonable post-dispute investigation and thereafter failed to correct inaccurate and incomplete reporting as to the Loan. Section 1681o authorizes consumers to bring suit for damages caused by a furnisher's negligent breach of its duties to consumers under 15 U.S.C. § 1681s–2(b). See *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir.2011). Although furnishers such as Temple are obligated to provide complete and accurate information to CRAs even in the first instance, i.e., before a dispute, under 15 U.S.C. § 1681s–2(a), FCRA explicitly precludes private suits for failure to comply with that statutory duty, 15 U.S .C. § 1681s–2(c), and instead provides for enforcement of that provision by federal and state officials, 15 U.S.C. § 1681s–2(d). The claims here are thus predicated solely on BOA's conduct after it was informed of Plaintiff's dispute by Equifax.

A furnisher's post-dispute investigation into a consumer's complaint must be "reasonable," *SimmsParris*, 652 F.3d at 359, but did not expound upon what that standard requires. We have recognized, though, that CRAs also are required to follow "reasonable procedures" with respect to the accuracy of consumer data under FRCA, see 15 U.S.C. § 1681e(b), and in that similar context we have explained that a reasonable procedure is one " 'that a reasonably prudent person would undertake under the circumstances.'" *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir.2010) (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996)). That issue "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Id.* (quotation marks omitted).

BOA, along with Equifax, acted recklessly and with wilfullness for violations under 15 U.S.C.§ 1681s–2(b) of the FCRA,  as both the furnisher and the credit reporting agency both had actual knowledge and evidence at hand that the credit dispute was, indeed, a "short sale" and not a "foreclosure", and as such Plaintiff has a private right of action against BOA and Equifax.

12

Along with permitting actual damages, costs, and attorney's fees for negligent violations of duties imposed under § 1681s–2(b), FCRA also provides for an award of punitive damages for willful violations of those same duties under 15 U.S.C. § 1681n. Liability for willful violations will lie not only in the case of knowing violations of the statute but also if a defendant acts with "reckless disregard" of the statute's terms. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* An actor's "subjective bad faith" is irrelevant—the test is whether the actor's conduct was "objectively unreasonable." *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248–49 (3d Cir.2012).

In determining whether an actor's conduct was reckless, a court should examine the text of the statute, case law that existed at the time of the alleged violation, and any agency interpretations. *Safeco*, 551 U.S. at 69–70. "[A] dearth of authoritative guidance" makes it less likely that a party's conduct was objectively unreasonable, but the absence of such authority does not "immunize" an actor from potential liability where the statute is "far too clear" to support the actor's interpretation. *Cortez*, 617 F.3d at 721–22. We have noted as to FCRA in particular that:

[T]he breadth and scope . is both evident and extraordinary . Moreover, it is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it . [I]t is imperative that we do not allow a company that traffics in the reputations of ordinary people a free pass to ignore the requirements of the FCRA each time it creatively incorporates a new piece of personal consumer information in its reports.

*Id.* at 721–23 (citations and quotation marks omitted).

13

A furnisher's objectively unreasonable actions with respect to a particular consumer's account can support a jury finding of willfulness. Blanket policies, too, can underpin such a finding. *See, e.g., Boggio*, 696 F.3d at 620 (remanding for a jury trial as to whether a furnisher's policy "prohibit[ing] its employees from performing anything more than a cursory confirmation of [the consumer's] status before reporting back to a CRA" constituted willful violation of the FCRA).

The FCRA at subsection **1681s-2(a)** prohibits furnishers from reporting "inaccurate" information about consumers. As such, the FCRA placed an affirmative duty on furnishers to correct and update information which they know, or reasonably should know, is inaccurate. The subsection requires furnishers to flag or otherwise provide notice to credit reporting agencies of any "dispute" by a consumer related to his or her credit information or history. **FCRA, 15 U.S.C. §§ 1681s-2(a)(1)-(3);** see also *Gorman, supra,* ___ F.3d ___, 2009 WL 3365928 at *3-*4 (amended 10/21/09 opinion); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009).

## **FCRA CREATES PRIVATE RIGHT OF ACTION AGAINST FURNISHERS AS WELL**

Unlike § **1681s-2(a),** the "FCRA expressly creates a private right of action for willful or negligent non-compliance." *Gorman, supra*, 2009 WL 3365928 at *4 (citing **15 U.S.C. §§ 1681n and o);** accord *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). Consequently, a consumer possesses a private right of action against a furnisher of information for damages for violation of its **§ 1681s-2(b)** reinvestigation duties. Plaintiff was being pressured by the reprehensible conduct of BOA, through fraud and extortion, into paying alleged debt on paid-off short sale claiming it was a false foreclosure matter, and this supports a punitive damages award.

14

In *Saunders v. Branch Banking and Trust Co. of VA,* 526 F. 3d 142 (4th Cir. 2008), it addresses the "financial vulnerability" of "the target of the conduct.*" State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 419, 123 S.Ct. 1513 (2003). *Saunders* had a modest income and limited resources compared to *BB & T.* Furthermore, *BB & T's* conduct rendered *Saunders* significantly more financially vulnerable. The CRAs lowered *Saunders'* credit score substantially because of the reported debt, making it impossible for him to obtain a new loan at a favorable interest rate, but the CRAs would not have factored this debt into *Saunders'* credit score if *BB & T* had reported the dispute. Thus, *BB & T's* refusal to correct its error made it more difficult for *Saunders* to access credit and increased his financial vulnerability. *Cf. In re Russell,* 378 B.R. 735, 740-43 (Bankr. E.D.N.Y.2007) (collecting cases involving furnishers allegedly refusing to correct reports to CRAs in order to pressure debtors into paying discharged debts, in violation of bankruptcy law).

The same scenario presents itself in this case. Plaintiff Serfess had a modest income and limited resources compared to BOA (and Equifax for that matter). Based on BOA's false and fraudulent information, Equifax lowered Serfess' credit scores substantially because of the falsely reported debt, making it impossible for him to obtain a new loan or mortgage at a favorable interest, or at all. Thus, BOA's refusal to correct its error (false and fraudulent) made it more difficult for Serfess to access credit and increased his financial vulnerability. Serfess was being pressured by BOA, through fraud and extortion, into paying the discharged short sale by claiming it was a false foreclosure matter.    BOA and Equifax are now doing it again to Plaintiff through the false credit reporting they are making to companies that inquire as to Plaintiff's credit worthiness.

BOA's intentional misconduct and longstanding refusal to correct its errors are more

reprehensible than negligence or a mistake quickly corrected. *See, e.g., Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 775 (9th Cir.2005) (reasoning that a company's failure to remedy or address the effects of a statutory violation supports punitive damages award); *Bogle v. McClure*, 332 F.3d 1347, 1361 (11th Cir.2003) (considering conduct more blameworthy for purposes of punitive damages analysis when it was "more than mere accident" and engaged in "intentionally").

The Third Circuit in *Seamans v. Temple University*, 744 F.3d 853 (3d Cir. 2014), held that, even if information provided by a furnisher in response to a consumer's dispute received from a consumer reporting agency (CRA) is technically correct, it may nonetheless be inaccurate in violation of the Fair Credit Reporting Act (FCRA). The Court also held a furnisher can be held liable under the FCRA for its failure to report to the CRAs that the claim is disputed, and punitive damages can be imposed where a company's policies do not comply with a furnisher's obligations under the law. While this case involved higher education institutions of their obligations under the FCRA to furnish accurate and complete information regarding student loan indebtedness to CRAs, it has much broader implication for all furnishers on three important issues.

The Third Circuit joined the Fourth, Sixth and Ninth Circuits in holding that the reasonableness of a post-dispute investigation is not solely determined by the accuracy of the information reported. *See Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). Even if the information provided in response to a dispute is technically correct, the Third Circuit ruled it may nonetheless be inaccurate if, through omission, it "create[s] a materially misleading impression," which in this

16

case [*Seamans*] involved not disclosing the account's date of first delinquency or the account's collection history. The *Seamans* Court therefore interpreted a furnisher's obligations under the FCRA to mean that an investigation can be unreasonable, even if it results in technically accurate information being provided to the CRAs, where the information is "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect," on a consumer. This opinion also reiterates that whether an investigation is reasonable is almost always a fact question to be submitted to the jury, rather than decided on summary judgment.

Second, the Third Circuit joined the Fourth and Ninth Circuits in holding a furnisher violates the FCRA when, having received notice of a consumer's "potentially meritorious dispute," it fails to report the claim is disputed as part of its post-investigation response to the CRAs. *See Saunders,* 526 F.3d at 148–50; *Gorman,* 584 F.3d at 1163. The Court explained that a furnisher's continuing failure to flag an account as disputed constitutes a violation of 15 U.S.C. § 1681s-2(b), and this obligation serves two purposes: (1) the furnisher, not the CRA, is in the best position to determine whether the dispute is bona fide, and thus the furnisher's validation of the dispute signifies that the dispute is genuine; and (2) the furnisher must provide notice of the dispute to all CRAs to whom it originally submitted the information—not just to the CRA which initially notified the furnisher of the dispute.

Finally, the Court held that a furnisher's objectively unreasonable actions with respect to implementing and training representatives on appropriate policies and procedures can support an award of punitive damages. The Third Circuit noted that "blanket policies" limiting a furnisher's employees to performing a cursory confirmation of the consumer's status before reporting back to a CRA, never resulting in marking an account as disputed, and only allotting analysts "5 to 10 minutes" to complete investigations, can result in a willful violation of the FCRA. In what

should be treated as a stern warning to furnishers, the panel then stated that punitive damages can be imposed where a furnisher spends an average of "only" 15 minutes investigating each dispute and maintains a policy never to flag accounts as disputed because "these policies would appear to be in outright conflict with a furnisher's duties under FCRA."

Plaintiff Serfess' case against BOA has all three (3) components referenced above: (1) BOA's information furnished to Equifax was knowingly inaccurate. The information was "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect," on a consumer. BOA submitted fraudulent information of a foreclosure against Plaintiff to Equifax to extort payment from Plaintiff. When Plaintiff had his former lawyer, David Ferrante, produce proof of the short sale through federal HUD-1 Settlement Statement and BOA's March 4, 2011 short sale approval letter, Equifax became aware of the inaccurate and false information. This information was relayed to BOA. (2) According to all of the ACDVs, BOA fraudulently and falsely continued to keep the foreclosure on the record. BOA still has NOT corrected the record to what it is supposed to be: "deleted". Plaintiff's disputes were bona fide. BOA continued to fail to flag the account as disputed by their non-response in light of all of the evidence, and therefore were and continue to be in violation of 15 U.S.C. § 1681s-2(b).

Now, Defendant Bank of America and BANA try to hide behind minor technicalities *ad nauseum*. It doesn't absolve them of the fact they're involved in a conspiracy to defraud Plaintiff and this Court. Bank of America even falsely alleges that the Second Amended Complaint ("SAC") was not filed. BOA's counsel is directed to Document 25-1 **Filed 02/28/14** Page 1 of 73 PageID: 323. Magistrate Judge Joel Schneider granted the Motion to Amend, which included the filed SAC.

Contrary to Defendant BOA's counsel, the SAC was properly served upon BOA. BOA's

18

counsel obviously was properly served, because they make all kinds of arguments to dismiss the SAC and go on at length why. As for service, obviously BOA's counsel received service of the SAC. Plaintiff served BOA by Federal Express. Mails today are recognized as an efficient and inexpensive means of communication. *Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 319 (1950)*. Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. *Mennonite Board of Missions v. Adams, 462 U.S. 791, 800 (1983)*. BOA's counsel's complaint about service is just another "red herring" to deflect their bad faith fraudulent acts away from the District Court.

With respect to Defendant BOA's allegations that Plaintiff has failed to present admissible evidence to demonstrate that there are triable issues of material fact, they fail to refute Plaintiff's Statement of Material Facts. In fact, BOA's counsel admits to the documents addressed in Plaintiff's Statement of Material Facts supporting his Motion for Summary Judgment against BOA/BANA, which include, but are not limited to the Federal HUD-1 Settlement Statement showing BOA/BANA accepted $1,000.00 cash settlement from Plaintiff to consummate the "short sale" agreement, and also include BOA's "short sale approval letter" evidencing the matter was a short sale and not a foreclosure as BOA/BANA has fraudulently submitted to Equifax.

As an additionally important pertinent fact, BOA's counsel, Mr. Robert E. Warring, Esq. submits a self-serving, inadmissible "Declaration of Robert E. Warring, Esq." which presents him as a witness and advocate/attorney for his client. This is a blatant violation of the Rules of Professional Conduct, RPC 3.7 (lawyer cannot act as a witness and be an advocate in the same

19

case) because it constitutes a serious conflict-of-interest (RPC 1.7) and professional misconduct (RPC 8.4).

Furthermore, BOA/BANA never provided any proof that they own the Original blue ink/wet ink mortgage note. They continually evade and obfuscate the issue. This indicates that they do not have the Original mortgage note, thus, continuing the perpetration of the fraud, conspiracy and probable racketeering. Now we have BOA and Equifax conspiring to submit false and fraudulent information on Plaintiff's credit report to harm and damage Plaintiff—even though his credit score is 743!

## CONCLUSION

For the foregoing reasons, Plaintiff Joseph Serfess respectfully requests that this Court grant his motion pursuant to Fed.Civ.R.Proc. Rule 60 (b) (1), (2), (3), (4), & (6), to reinstate Equifax Credit Information Services as a Defendant in the above-captioned lawsuit based on retaliation by Equifax and Bank of America and grant him summary judgment, *sua sponte*.


Dated: January 13, 2015

Joseph Serfess
314 Lakewood Terrace
Newton, New Jersey 07860
(973) 289-7078